GEORGE T. SWANN, Auditor, &c., vs. MELVILL WILSON.

The act of the legislature of 4th of March, 1848, appropriated the "sinking fund" then in the treasury, and whatever might afterwards come into the treasury, to the payment of the coupons of interest due on the bonds of the State, issued on account of the Planters Bank, according to priority of majority.

The third section of the act, prohibits the treasurer from paying unless the bond with the coupon attached be presented to him; and on payment he is required to cut it from the bond.

The original act incorporating the Planters Bank, authorized the governor to subscribe for ten thousand shares of stock, to be paid for in bonds bearing five per cent. interest; and it pledged the faith of the State and the stock of the State in the payment of the principal and interest of the bonds falling due.

The act also provided for the establishment of the "sinking fund," for the payment or redemption of said bonds; and until the extinguishment of the bonds which shall first become due, no part of said fund should be applied to any other purpose.

The State never took any stock, or issued any bonds under the provisions of that act.

By the supplemental act of Dec. 16th, 1830, the Governor was authorized to subscribe for five thousand shares of the stock of the bank, and negotiate a loan, &c.; and for this loan he was authorized to issue the bonds of the State, bearing interest at the rate of six per cent., payable half yearly.

The faith of the State and the stock of the State in the bank, were pledged to the payment of the bonds falling due.

Bonds were issued according to the provisions of the act of 1830; and in February, 1833, another act was passed by the legislature, which authorized the governor to subscribe for an additional amount of stock, and to issue the bonds of the State for the loan of money to pay for the stock, for which the faith and stock of the State in the bank were pledged.

A portion of the bonds authorized by the last act were issued with coupons of interest attached thereto; and the petitioner for the mandamus in this case is the acknowledged owner of one of the bonds with the coupons for interest.

Neither of the acts mentioned pledged the "sinking fund" to the holders of the bonds issued, according to the provisions of these laws for the payment or redemption thereof; the only pledge being the faith of the State and stock of the State in the bank.

The surplus of dividends that remained after the payment of the interest on the bonds constituted the "sinking fund," which could have been appropriated by the legislature to any purpose they thought proper.

The act of March 4th, 1848, expressly appropriated it to the "coupons" of

interest on the bonds issued on account of the bank, according to the priority of the coupons maturing or falling due.

In the absence of any statement in the petition and answer, that there are no "coupons" unpaid, falling due in March, outstanding, the audit or will not be directed to issue his warrant for the amount of the "coupons" demanded and due in September.

The judgment of the circuit court, directing a mandamus to issue for a warrant for both "coupons," was erroneous.

On appeal from the circuit court of Hinds county; Hon. P. W. Tompkins, judge.

This was an application made by M. Wilson, who was an assignee of a bond of the Planters Bank of Mississippi, with "coupons of interest" attached thereto, to the judge of the circuit court, for a mandamus to compel George T. Swann, auditor of public accounts, to issue a warrant on the treasurer of the State for the amount of two coupons of interest which fell due on the 1st days of March and September, 1841, for the payment of the same, according to the act of the legislature of March 4th, 1848, appropriating the *sinking fund for that* purpose. The court below granted the application of the petitioner for a mandamus, from which decision of the court the auditor, Swann, appealed to this court.

*D. C. Glenn,* attorney-general for the State.

The sinking fund was intended to pay the Planters Bank bonds, and the interest thereon, on all said bonds. Now the first half million of these bonds have no coupons attached to them, yet they bear interest on their face as much so as those having coupons; they are oldest in date, and entitled to be first paid. These coupons are no part of the bond, and are no-where authorized by the legislature; they were adopted for convenience by the commissioners who sold the bonds; they have no authorized date and bind nobody; without them, interest is as much due on these bonds as with them. The act falsely recites that these coupons were issued by the State, when such is not the case. Then does "their" refer to bonds, or to coupons? According to grammar, it must refer to bonds. It is said that "coupons" alone figure in the act.

Why, the very title is to pay "the bonds and coupons of interest; but the word majority"—(it of course was intended to be "maturity")—maturity of what? not of coupons, because they have no maturity. They had no increase, no maturity; they did not exist in law; and now, if destroyed, the amount they purport to represent would still exist and be payable by the State. Then it must refer to bonds; and if so, the act is operative: 1st, because the first $500,000 have no coupons to be cut off as required by the third section; 2d, because later bonds cannot be paid until those of an earlier maturity have been paid.

It is true, no bonds were sold directly under the act of 1830, (Hutch. Code 311,) though under it (§ 10,) the fund was pledged. But by the supplement, Dec. 16, 1830, which was a part of it, and under which bonds were issued, § 34 and § 35, pledges were made. These pledges are renewed in the act of 1833, Code 314, and finally in the act of 1839, § 3, Code 315, the sinking fund is solemnly pledged to the payment of "the bonds of the State, issued under the act to establish a Planters Bank in the State of Mississippi, (1830,) and the several acts supplemental and amendatory thereto, (1830, '31, '32, '33,) as well as all interest to accrue thereon, (§ 2,) "to be applied to the discharge of said bonds, which shall first become due, amounting to the sum of $250,000," &c. This law is still in force, and has not been repealed.

I admit, that though the sinking fund is a trust fund, still the legislature can divert and dispose of it as they will; yet I contend the legislature have always said it should go in a certain way, and that it must go that way until an intention is clearly shown to apply it otherwise. This is not found in the act of 1844. On the contrary, construe that law as I desire, and our action conforms both to the grammatical sense of the law, and the uniform course of the legislature since 1830 to 1848. Construe it as you wish, and the legislature is guilty of bad faith in taking a fund pledged to the senior bonds and giving it to their junior, and of neglecting to pay claims long since due to pay those most recently due.

*E. W. F. Sloan*, for appellee.

The creation of the sinking fund did not constitute an irrevocable grant or assignment. It was but a scheme of economy adopted on the part of the State, for the purpose of causing the profits of its stock to discharge its bonds and interest as far as possible without taxation. It is similar in its character to the arrangement sometimes made between partners, by which they agree to devote a certain per centum of their profits to meet periodical liabilities or contingent losses. Although dedicated to a particular object, it is, notwithstanding, subject to their control, as any other part of their partnership effects would be. The sinking fund is the property of the State to all intents and purposes, and is subject to its direction and control. See *State of Mississippi* v. *Dickinson*, 12 S. & M. 583, and the cases there cited.

The act of appropriation approved March 4th, 1848, provides that the amount of the sinking fund then in the treasury, and whatever might thereafter come into the treasury belonging to said fund, shall be, and it thereby was appropriated to the payment of the coupons for interest due on said bonds.

The act declares that the appropriations therein made were expressly provided for " the payment of coupons of interest on said bonds, according to their priority of majority."

It is contended, on the other side, that the pronoun *their* refers to the noun *bonds*, and not *coupons* : that as the bonds which were issued and negotiated in 1831 first matured, the interest due on them is to be first paid according to the provisions of this act. But as those bonds have no coupons of interest attached thereto, the money cannot be applied to the payment of the interest due on them, as the appropriation was made for the payment of coupons only. This construction would render the act wholly inoperative. But there is nothing in the act from the beginning to the end, which warrants such a construction. The payment of coupons of interest is the declared object of the whole act. The word " coupons " is the principal substantive word in every section of it.

It is insisted as a rule of grammar, that the pronoun must have for its antecedent the noun last preceding it. It will not be pretended, however, that this is a universal rule. There are

Swann v. Wilson.

thousands of examples to be found in good authors to the contrary; too many, in fact, to warrant us in calling it a general rule. The sense of the passage must always determine what noun is referred to by a subsequent pronoun, if there be more than one noun in the sentence. In the section referred to, "coupons" figures as the principal noun; the word bond is incidental. The provision is made for the payment of what? Of coupons of interest. What coupons of interest? The coupons of interest on said bonds. How are they to be paid? According to their priority, &c. According to the priority of what? Of the coupons. Of what coupons? Of the coupons of interest on said bonds.

Any other construction would render the section absurd, and the whole act inoperative.

*Guion & Baine*, on the same side.

*George S. Yerger*, on the same side.

Mr. Justice YERGER delivered the opinion of the court.

By the act of 4th March, 1848, the legislature appropriated the amount of the "sinking fund" then in the treasury, and whatever thereof might afterwards come into the treasury to the payment of the "coupons of interest due on the bonds of the State, issued on account of the Planters Bank."

The act declared that the appropriation of said funds was made expressly for the "payment of the coupons of interest on said bonds, according to their priority of majority." The third section of the act prohibited the treasurer from paying, unless the bond, with the coupon attached, was presented to him, and on payment he was required to cut it from the bond.

The defendant in error, holding one of these bonds with coupons attached, presented it to the auditor and demanded a warrant on the treasurer, which was refused. He then applied for a mandamus, which was made peremptory. From that judgment, the auditor has appealed.

It is contended by the attorney-general, that the "sinking fund" was intended to pay all the bonds issued on account of

the Planters Bank and the interest thereon, as well those which had no "coupons" attached as those which had, and that when the legislature declared, in the act of 1848, that "payment of the coupons of interest on said bonds, according to their priority," &c. should be made, it intended to provide that the payment should be made out of the "sinking fund," according to the "priority of the maturity" of the bonds themselves, and not of the coupons.

The original act incorporating the Planters Bank, was passed on the 10th February, 1830.

By the seventh section of that act, the governor was authorized to subscribe for ten thousand shares of stock, amounting to one million of dollars, to be paid for in bonds bearing five per cent. interest. The bonds were to be made payable at four different times. Each set of bonds was to be for $250,000.

The eighth section of the act "pledged the faith of the State of Mississippi, and also the stock of the State in the payment of the principal and interest of the bonds, upon the falling due thereof."

The tenth section of that act provided for the establishment of the "sinking fund," for the redemption of the said bonds, and provided "that until full payment and extinguishment of the bonds, which shall first become due, amounting to $250,000, no part of that fund should be applied to any other purpose than the extinguishment of the principal and interest of said bonds.

The State never took any stock, and never issued any bonds under the provisions of this act. On the 16th December, 1830, a supplemental act was passed, by which the governor was authorized to subscribe for 5,000 shares of the stock of the bank, and to negotiate a loan for $500,000. For this loan, he was authorized to issue the bonds of the State, bearing interest at the rate of six per cent. per annum, payable half yearly. For the payment of the principal and interest of these bonds, upon the falling due thereof, the faith of the State, and the stock of the State in the bank, was pledged. Nothing was said in this supplemental act on the subject of the "sinking fund;" but it is known that the surplus of the profits accruing to the State from the dividends declared on its stock, remaining after pay-

ment of interest on the bonds falling due from time to time, was allowed to accumulate according to the provisions of the original charter, and constituted the "sinking fund." It was a part of this fund remaining in the treasury, which the act of March 4th, 1848, appropriated to the payment of the coupons of interest.

Bonds were issued according to the provisions of the act of 1830, and, by the statement in the return of the auditor to the mandamus, are still outstanding and unpaid.

In February, 1833, another act of the legislature was passed, which authorized the governor to subscribe for an additional amount of stock of $1,500,000, and to issue the bonds of the State for the loan of money to pay for the stock. For the payment of these bonds and the accruing interest thereon, the faith of the State, and the stock of the State in the bank, were pledged.

In March, 1833, a portion of the bonds authorized by the last act were issued, with coupons of interest attached thereto; and the petitioner for the mandamus in this case, is the admitted holder of one of these bonds, with "coupons" attached.

The auditor in his return admits that there are no coupons of interest attached to any bond or bonds falling due at an earlier period than the first day of March, 1841.

The bonds for the sum of $500,000, which were first issued by the State according to the provisions of the act of December, 1830, have no coupons of interest attached thereto, but bear an interest of 6 per cent. per annum on the face. Those bonds mature at an earlier day than the bonds to which the coupons are attached; and as before stated, the attorney-general contends for the auditor, that, as those bonds mature earlier, the "sinking fund" should be first applied to the payment of interest on them; no part of which interest, it is admitted, has been paid since 1840.

Neither the act of December, 1830, nor of February, 1833, pledged to the holders of the bonds issued according to the provisions of those laws, the "sinking fund" as a trust fund, for the payment or redemption of the same. No bond was ever received on the pledge that that fund should be applied in pay-

ment thereof. The only pledge given in the acts of December, 1830, and February, 1833, was the faith of the State, and the stock of the State in the Planters Bank. The dividends which were declared from time to time were the property of the State. The surplus of dividends that remained after the payment of the interest on the bonds, and which made the "sinking fund," was under the control of the legislature, and could have been appropriated to any purpose that it suited the wisdom of that body to have directed. We do not find any act which makes an appropriation of it, except the act of March 4, 1848. That act expressly appropriates it to the "coupons" of interest on the bonds issued on account of the Planters Bank. It is true we cannot see any reason why the "coupons" of interest should have been paid in preference to the interest on the bonds which had no coupons. It may be that the legislature supposed all the bonds had been issued with coupons, or a different provision would have been made; but, however that may be, it is very clear that, by the act of 1848, it has declared that the "sinking fund" shall be appropriated to the payment of the "coupons of interest;" and though equal justice would seem to have dictated that it should have been applied *pro râta* to the payment of the interest due on all the bonds, that was a subject solely for the consideration of the legislature, which had the right to direct the payment in the manner fixed by this act.

To give the construction to the act contended for by the attorney-general, would render it entirely inoperative, because it provides that no payment of any interest shall be made until the bond, with the coupon attached, shall be presented to the treasurer. We cannot do such violence to what was evidently the legislative intention, as declared in express words, to wit, "the payment of the coupons of interest."

This payment was to be made according to the "priority of majority," that is, according to the priority of the "coupons" maturing or falling due.

It appears from the petition and the return, that none matured and remained unpaid prior to March, 1841; and we think for that "coupon," the petitioner is entitled to a warrant from the auditor. With reference to the "coupon" maturing in Septem-

ber, nothing is said in the petition or admitted in the answer. It may be that there are " coupons " unpaid for interest falling due in March outstanding, which would absorb the whole of the " sinking fund " in the treasury; and if so, they would be entitled to priority of payment before the " coupons " maturing in September, 1841. In the absence of any statement in the petition, or averment in the answer, on this subject, we do not think it would be proper for us to direct the auditor to issue his warrant. We have no doubt that will be done without.a man-damus, if the facts entitle the party to it, according to the pro-visions of the law, as we have here construed them. As the judgment of the circuit court directed a mandamus to issue for a warrant for both " coupons," that judgment must be reversed, and a judgment rendered in this court for a mandamus, in accordance with the views expressed in this opinion.